UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| American Federal Bank, a federal savings bank,<br><br>    Plaintiff.<br>v.<br><br>West Central Ag Services, a Minnesota cooperative, Georgetown Farmers' Elevator Company, a Minnesota corporation, Chad Oberg, an individual, Richard Oberg, an individual, Leslie Oberg, an individual, and Laurel Oberg, an individual<br><br>    Defendants. | Case No: _____<br><br>**VERIFIED COMPLAINT** |

Plaintiff American Federal Bank, for its verified complaint against Defendants West Central Ag Service, Georgetown Farmers' Elevator Company, Chad Oberg, Richard Oberg, Leslie Oberg and Laurel Oberg, states and alleges as follows:

## I. PARTIES

1. Plaintiff American Federal Bank ("AFB") is a federal savings bank with a principal place of business located at 215, Fifth Street North, Fargo, North Dakota 58102.

2. Defendant West Central Ag Services ("West Central") is a Minnesota cooperative with a registered office address of 329 1st Street Southwest, Ulen, Minnesota 56585.

3. Defendant Georgetown Farmers' Elevator Company ("Georgetown") is a Minnesota corporation with a registered office address of 607 US Highway 75,

Georgetown, Minnesota 56546.

4. Defendant Chad Oberg is an individual who resides at 4310 110th Avenue North, Moorhead, Minnesota 56560.

5. Defendant Richard Oberg is an individual who resides at 423 Clearview Court, Felton, Minnesota 56536.

6. Defendant Leslie Oberg is an individual who resides at 4310 110th Avenue North, Moorhead, Minnesota 56560.

7. Defendant Laurel Oberg is an individual who resides at 423 Clearview Court, Felton, Minnesota 56536.

## II. JURISDICTION AND VENUE

8. The court has jurisdiction over this matter under 28 U.S.C. § 1332 given that: (i) the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs; and (ii) there is complete diversity of citizenship given that: (a) AFB is deemed a citizen of the state of North Dakota pursuant to 12 U.S.C § 1464(x); (b) West Central is deemed a citizen of the state of Minnesota pursuant to 28 U.S.C. § 1332(c)(1); (c) Georgetown is deemed a citizen of the state of Minnesota pursuant to 28 U.S.C. § 1332(c)(1); and (d) the Obergs are all citizens of the state of Minnesota.

9. Venue in the District of Minnesota is appropriate pursuant to 18 U.S.C. § 1965(a) given that Defendants are located in Minnesota and the facts alleged below primarily occurred in Minnesota.

## III. FACTS

10. Upon information and belief, for over 20 years West Central provided

agricultural goods and services to Chad Oberg, Richard Oberg, Leslie Oberg and Laurel Oberg (Chad Oberg, Richard Oberg, Leslie Oberg and Laurel Oberg are collectively referred to herein as the "Obergs"), through their assumed operating name Oberg Family Farms ("Oberg Farms") on an unsecured basis.

11. On or about July 8, 2017, West Central filed a UCC Financing Statement with the Minnesota Secretary of State purporting to perfect a lien on the assets of Oberg Farms. Attached hereto as **Exhibit A** is a true and correct copy of that UCC Financing Statement.

12. Upon information and belief, West Central filed the UCC Financing Statement because it was concerned about the financial stability of Oberg Farms' given its habitual failure to make timely payment of amounts owed to West Central.

13. Indeed, a financial statement for Oberg Farms dated December 31, 2017 showed, that as of that date, approximately $650,000 was owed to West Central by Oberg Farms.

14. On or about January 16, 2018, Oberg Farms paid finance charges to West Central in the amount of $73,363. Upon information and belief, said finance charges were incurred and paid because Oberg Farms was substantially late in making payments to West Central.

15. On April 25, 2018, West Central and Oberg Farms executed a line of credit agreement (the "Line of Credit") in the amount of $1,500,000, along with a security agreement. The Obergs also executed personal guarantees in favor of West Central in connection with the Line of Credit.

16. Upon information and belief, the Obergs were insolvent as of the date the Line of Credit was executed and West Central either knew or should have known that the Obergs were insolvent.

17. On information and belief, the $650,000.00 due to West Central from Oberg Farms and reflected on the December 31, 2017, was consolidated in the Line of Credit.

18. The Line of Credit was set to mature on January 31, 2019. The Line of Credit was explicitly only to be used for the purchase of goods and services from West Central. Through said agreements, West Central was gaining significant additional forms of recourse against Oberg Farms and its principals.

19. Upon information and belief, West Central and Oberg Farms operated for many years without any type of line of credit agreement and only started using this type of agreement very recently due to the slow payment, or non-payment, of amounts owed by Oberg Farms to West Central and was intended by West Central to shore up an unsecured debt from a customer it knew was in financial distress.

20. Upon information and belief, from May 31, 2018 through July 2, 2018, Oberg Farms purchased fertilizer from Georgetown.

21. Upon information and belief, as of July 2, 2018, the total debt owed to Georgetown by Oberg Farms was in excess of $100,000.00.

22. On or about September 14, 2018, West Central filed a CNS Financing Statement on Oberg Farms. Attached hereto as **Exhibit B** is a true and correct copy of the CNS Financing Statement. Upon information and belief, West Central filed the CNS

4

Financing Statement as an additional form of security that became necessary as a result of Oberg Farm's persistent failure to pay amounts owed to West Central and West Central's understanding of Oberg Farms' financial peril.

23. On September 25, 2018, AFB made a loan to the Obergs in the amount of $900,000 (the "900K Loan") for the express purpose of constructing a grain bin (the "Grain Bin") on real property located at 4310 110th Avenue N., Moorhead, MN (the "Real Property"). Attached hereto as **Exhibit C** is a true and correct copy of the promissory note and disbursement sheet for the 900K Loan.

24. Prior to making the 900K Loan, AFB ordered an appraisal on the Real Property, which indicated that the Real Property was expected to increase in value by $1,475,000 through the construction of the Grain Bin.

25. As security for the Loan, AFB took a first mortgage (the "900K Mortgage") on the Real Property, which was recorded on September 28, 2018. Attached hereto as **Exhibit D** is a true and correct copy of the 900K Mortgage.

26. In order to induce AFB to make the 900K Loan, as was specifically admitted by Chad Oberg to AFB, the Obergs submitted financial statements to AFB that were knowingly and materially false in that they, among other things, substantially overstated the amount of grain the Obergs had on hand. In reality, as was specifically admitted to AFB by Chad Oberg, Oberg Farms was insolvent as of the date the 900K Loan was made and was unable to pay its debts as they came due.

27. On September 26, 2018, Oberg Farms had a balance of $89,647.50 in its operating account at Bell Bank (the "Operating Account"). Attached hereto as **Exhibit E**

is a true and correct copy of the Operating Account records for September and October of 2018.

28. On September 27, 2018, $54,215.07 in funds were withdrawn from the Operating Account.

29. That same day, $890,941.50 in proceeds from the AFB 900K Loan were deposited into the Operating Account.

30. The balance in the Operating Account was $915,897.93 after all activity that occurred on September 27, 2018.

31. From the period of September 28, 2018 through October 14, 2018, the following deposits were made into the Operating Account for the following purposes:

   a. On September 28, 2018, a grain check in the amount of $2,892,233.67 was credited to the Operating Account. Bell Bank, who had a security interest in Oberg Farms' grain and the proceeds therefrom, immediately swept the full of amount of the check and it applied it to amounts owed to it by Oberg Farms. As a consequence, Oberg Farms never actually had access to the funds from this grain check.

   b. On October 9, 2018, a miscellaneous deposit in the amount of $94.74 was made into the Operating Account.

   c. On October 10, 2019, a grain check in the amount of $1,202,361.58 was credited to the Operating Account and Bell Bank, again, immediately swept the full of amount of the check and it applied it to amounts owed to it by Oberg Farms. As a consequence, Oberg Farms never actually had access to

the funds from this grain check.

    d. On October 12, 2018, a miscellaneous deposit in the amount of $28,750.00 was made into the Operating Account.

    e. On October 12, 2018, a grain check in the amount of $293,408.21 was credited to the Operating Account and Bell Bank, again, immediately swept the full of amount of the check and it applied it to amounts owed to it by Oberg Farms. As a consequence, Oberg Farms never actually had access to the funds from this grain check.

32. Entering October 15, 2018, the Operating Account had a balance of $601,632.56. The full balance of the Operating Account as of October 15, 2018 is directly traceable to AFB's 900K Loan proceeds.

33. On October 15, 2018, Oberg Farms wrote a check from the Operating Account to West Central in the amount of $800,000 (the "West Central Check" and, specifically, the $601,632.56 in funds included in the check that are directly traceable to AFB's Loan proceeds as the "West Central Transfer"). The Operating Account did not have sufficient funds to cover the Check.

34. To ensure that the Operating Account had sufficient funds to cover the West Central Check, Dawn Oberg, a relative of the Obergs, wrote a personal check to Oberg Farms in the amount of $150,000 and it was deposited into the Operating Account that same day.

35. At the time the West Central Transfer was made Oberg Farms was insolvent both because its total liabilities exceeded its total assets and because it was

unable to pay its debts as they came due as unequivocally demonstrated by, among other things, Dawn Oberg's infusion of personal funds to cover the West Central Check.

36. The West Central Check was cashed by West Central on October 24, 2018.

37. None of the proceeds from AFB's 900K Loan were used by Oberg Farms for the express and only purpose of the loan – the construction of the Grain Bin.

38. As a direct result of the misappropriation of the 900K Loan proceeds, Oberg Farms was unable to pay various contractors associated with the construction of the Grain Bin and the construction project stalled midway through.

39. On December 13, 2018, AFB made a second loan to Chad Oberg and Leslie Oberg in the original principal amount of $700,000 (the "700K Loan" and collectively with the 900K Loan as the "Loans") for the express purpose of home construction. Attached hereto as **Exhibit F** is a true and correct copy of the promissory note and disbursement sheet for the 700K Loan.

40. As security for the 700K Loan, AFB took a second mortgage on the Real Property (the "700K Mortgage"). Attached hereto as **Exhibit G** is a true and correct copy of the 700K Mortgage.

41. In order to induce AFB to make the 700K Loan, as was specifically admitted by Chad Oberg to AFB, Chad Oberg and Leslie Oberg submitted financial statements to AFB that were knowingly and materially false in that they, among other things, substantially overstated the amount of grain that Oberg Farms had on hand. In reality, as was specifically admitted to AFB by Chad Oberg, Oberg Farms was insolvent as of the date the 700K Loan was made and was unable to pay its debts as they came due.

42. After the 700K Loan was made, AFB held a principal amount of $1,600,000 in debt connected to the Real Property.

43. None of the 700K Loan proceeds were used for the purpose of home construction.

44. On January 28, 2019, Oberg Farms had a balance of $57,505.10 in its Operating Account. Attached hereto as **Exhibit H** is a true and correct copy of the Operating Account records for January and February of 2019.

45. On January 29, 2019, $173,134.00 of the 700K Loan proceeds were distributed by AFB to Chad Oberg, who deposited the funds into the Oberg Farms Operating Account that same day.

46. Also on January 29, 2019, Oberg Farms wrote a check to Georgetown in the amount of $104,139.86 (the "Georgetown Transfer"). The funds to make said payment came almost exclusively from the 700K Loan proceeds.

47. At the time the Georgetown Transfer was made Oberg Farms was insolvent both because its total liabilities exceeded its total assets and because it was unable to pay its debts as they came due.

48. As of the date of the Georgetown Transfer, Georgetown either knew, or should have known, of the insolvency of Oberg Farms given that, at that time, Oberg Farms' debt had been due and owing for a full 7 months.

49. On or about March 15, 2019, the Obergs granted a third mortgage over the Real Property to Bell Bank in connection to the terms of a "third forbearance agreement" referenced in that mortgage.

9

50. As of the date of this Complaint, the construction of the Grain Bin still has not been completed and various contractors on the project have attempted to assert mechanics' liens on the Real Property.

51. The failure of Oberg Farms to complete the Grain Bin construction, and the resulting state of the Real Property both from a physical and legal perspective, has diminished the value of the Real Property.

52. On May 2 and 3 of 2019, the Real Property was put up for auction and the highest bid was $1,425,000. This represents 26.76% of the appraised value of the Real Property had the Grain Bin construction been completed as planned. As such, the bid was rejected.

53. On June 21, 2019, AFB sent the Obergs a notice of default (the "Notice of Default") for, inter alia: (1) misuse of loan proceeds regarding the 900K Loan and the 700K Loan; (2) the submission of false and materially misleading financial statements to obtain the 900K Loan and the 700K Loan; (3) engaging in creditor workout activity with Bell Bank; and (4) allowing mechanic's liens to purportedly attach to the Real Property.

54. The Notice of Default provided the Obergs with 30 days to cure all of the identified defaults or the Loans would automatically accelerate, with all amounts owed becoming immediately due and owing.

55. The Obergs failed to cure any of the defaults and they failed to pay all amounts owed by July 21, 2019 or any time thereafter.

56. On July 2, 2019, AFB sent West Central correspondence demanding that it disgorge amounts received from the Obergs in the West Central Transfer. West Central

refused this demand.

57. On July 2, 2019, AFB sent Georgetown correspondence demanding that it disgorge amounts received from the Obergs in the Georgetown Transfer. Georgetown refused this demand.

58. On or about July 3, 2019, AFB received notice that the Obergs had requested Farmer-Lender Mediation under Minnesota Statutes Section 583.26. Pursuant to Minnesota Statutes Section 583.26, subd. 5, the effect of such mediation proceeding notice was that creditors were prohibited from engaging in enforcement action against the Oberg's agricultural property for a period of 90 days. The mediation proceeding notice did not, however, operate to prohibit general litigation action against the Obergs that is unconnected to any specific agricultural property.

59. On July 9, 2019, AFB learned that the Obergs had made a partial assignment for the benefit of the creditors (the "Assignment"). The Assignment applied to some, but not all of the assets of the Obergs, specifically including the Real Property.

60. The Assignment was filed with the Clay County District Court as file number 14-CV-19-2628 (the "Receivership Proceedings"). The Assignment designated Lighthouse Management, Inc. (the "Receiver") as receiver over the Real Property.

61. Through the Receivership Proceedings, Lighthouse is seeking to liquidate the Real Property and distribute the proceeds to the creditors of the Obergs. As such, AFB is not now seeking foreclosure of its mortgages. However, AFB does reserve the right to institute mortgage foreclosure proceedings in state court in the event that the Receivership Proceedings are dismissed.

62. While the Receivership Proceedings do contemplate a stay on certain enforcement actions regarding the Obergs, the Receiver has explicitly agreed that – due to the limited nature of the Assignment – any stay connected to the receivership would not apply to actions against the Obergs or other third parties that do not directly involve the property specifically identified in the Assignment. This understanding was memorialized in a corresponding court order dated August 16, 2019. Given that this lawsuit does not involve any property specified in the Assignment, it may proceed notwithstanding the Receivership Proceedings.

63. Through the Assignment and the Receivership Proceedings, the Obergs have effectively mooted out the Farmer-Lender Mediation, at least as it pertains to AFB, because the Obergs are no longer in possession of any agricultural property in which AFB claims an interest. In recognition of this fact, the Court in the Receivership Proceeding orally ordered that mediation be stayed, and Minnesota Extension – the entity that administers Farmer-Lender Mediation – has stayed the mediation.

64. Even after liquidation of the Real Property in the Receivership Proceedings, AFB will almost certainly suffer a loss in excess of $601,632.56.

65. As of August 6, 2019, the Obergs currently owe AFB the total amount of $943,037.50 under the 900K Loan documents, comprised of principal in the amount of $900,000.00, interest in the amount of $43,037.50, as well as costs, expenses and attorneys' fees.

66. As of August 6, 2019, Chad Oberg and Leslie Oberg currently owe AFB the total amount of $724,872.14 under the 700K Loan documents, comprised of principal

in the amount of $700,000.00, interest in the amount of $24,872.14, as well as costs, expenses and attorneys' fees.

67. AFB has been damaged by the transfer from Oberg Farms to West Central in the amount of $601,632.56.

68. AFB has been damaged by the transfer from Oberg Farms to Georgetown in the amount of $104,139.86.

## IV. CAUSES OF ACTION

### COUNT I: BREACH OF CONTRACT – 900K LOAN
### (Against the Obergs)

69. The loan documents connected to the 900k Loan are all valid and enforceable agreements between the Obergs and AFB.

70. The Obergs breached the 900K Loan documents through, inter alia, (1) misuse of loan proceeds regarding the 900K Loan; (2) the submission of false and materially misleading financial statements to obtain the 900K Loan; (3) engaging in creditor workout activity with Bell Bank; (4) allowing mechanic's liens to purportedly attach to the Real Property; and (5) failing to pay amounts owed to AFB when demanded.

71. As of August 6, 2019, the Obergs currently owe AFB the total amount of $943,037.50 under the 900K Loan documents, comprised of principal in the amount of $900,000.00, interest in the amount of $43,037.50, as well as costs, expenses and attorneys' fees.

72. AFB is entitled to judgment against the Obergs in an amount in excess of $943,037.50 for the Obergs' breach of the 900K Loan documents.

## COUNT II:  BREACH OF CONTRACT – 700K LOAN
### (Against Chad Oberg and Leslie Oberg)

73. The loan documents connected to the 700k Loan are all valid and enforceable agreements between Chad Oberg, Leslie Oberg and AFB.

74. Chad and Leslie Oberg breached the 700K Loan documents through, inter alia, (1) misuse of loan proceeds regarding the 700K Loan; (2) the submission of false and materially misleading financial statements to obtain the 700K Loan; (3) engaging in creditor workout activity with Bell Bank; (4) allowing mechanic's liens to purportedly attach to the Real Property; and (5) failing to pay amounts owed to AFB when demanded.

75. As of August 6, 2019, Chad Oberg and Leslie Oberg currently owe AFB the total amount of $724,872.14 under the 700K Loan documents, comprised of principal in the amount of $700,000.00, interest in the amount of $24,872.14, as well as costs, expenses and attorneys' fees.

76. AFB is entitled to judgment against Chad Oberg and Leslie Oberg in an amount in excess of $724,872.14 for their breach of the 700K Loan documents.

## COUNT III:  FRAUD IN THE INDUCMENT
### (Against the Obergs)

77. AFB restates and realleges the preceding paragraphs as though fully set forth herein.

78. Through submission of financial statements to AFB the Obergs were making false representations regarding their financial state.

79. These representations were material, susceptible of present knowledge, and known to be false by the Obergs at the time they were made.

80. The Obergs submitted the false financial statements to AFB intending that it rely on said financials and extend credit to the Obergs as a result.

81. AFB reasonably relied on the financial statements and extended financing to the Obergs as a direct result.

82. Had AFB known the true financial status of the Obergs it never would have made the Loans to them.

83. As a result of AFB's reliance on the false financial statements, it will directly and proximately suffer a loss in excess of $75,000.00

## COUNT IV: FRAUDULENT/VOIDABLE TRANSFER – ACTUAL FRAUD
### (Against West Central)

84. AFB restates and realleges the preceding paragraphs as though fully set forth herein.

85. Richard Oberg, Laurel Oberg, Chad Oberg and Leslie Oberg fraudulently induced AFB to make the 900K Loan by: (1) providing false and materially misleading financial statements; and (2) explicitly representing to AFB that they would use the 900K Loan proceeds to fund the construction of a new Grain Bin that would increase the value of the Real Property that functioned as collateral for the 900K Loan, when they had no intention of doing so.

86. None of the funds lent by AFB pursuant to the 900K Loan were used for construction of the Grain Bin. Instead, Oberg Farms used all loan proceeds for purposes other than the construction of the Grain Bin.

87. Specifically, among other things, Oberg Farms knowingly, intentionally,

and deliberately transferred $601,632.56 of the 900K Loan proceeds to West Central for payment of unrelated debt, when Oberg Farms was insolvent, and when it knew said funds had been lent for the express purpose of funding construction of the Grain Bin.

88. In taking this action, Oberg Farms acted with an actual intent to hinder, delay and defraud AFB to the direct benefit of West Central.

89. West Central cashed the check containing the 900K Loan proceeds knowing full well that Oberg Farms was insolvent and knowing full well the suspicious circumstances surrounding the West Central Check, given that: (1) Oberg Farms had a long standing debt with West Central that had, in the past, triggered the imposition of finance charges; (2) West Central had previously filed a UCC Financing Statement to perfect a lien that had arisen over Oberg Farms' commodities due to the persistent failure of Oberg Farms to pay amounts owed to West Central; (3) In April of 2019, West Central required Oberg Farms to execute the Line of Credit Agreement, along with guarantees and a security agreement, due to the persistent non-payment or slow payment of Oberg Farms; and (4) West Central had filed a CNS Financing Statement over Oberg Farms' commodities mere weeks before the West Central Check was issued due to the persistent failure of Oberg Farms to pay amounts owed to West Central.

90. As a result of the foregoing, Plaintiff is entitled to: (1) avoidance of the West Central Transfer; (2) attachment on the proceeds of the West Central Transfer; and (3) judgment against West Central in the amount of $601,632.56.

## COUNT V:  FRAUDULENT/VOIDABLE TRANSFER – ACTUAL FRAUD
### (Against Georgetown)

91. AFB restates and realleges the preceding paragraphs as though fully set forth herein.

92. Chad Oberg and Leslie Oberg fraudulently induced AFB to make the 700K Loan by: (1) providing false and materially misleading financial statements; and (2) explicitly representing to AFB that they would use the 700K Loan proceeds to fund home construction when they had no intention of doing so.

93. None of the funds lent by AFB pursuant to the 700K Loan were used for home construction.  Instead, Chad Oberg, by and through Oberg Farms, used all loan proceeds for purposes other than home construction.

94. Specifically, among other things, Chad Oberg, by and through Oberg Farms, knowingly, intentionally, and deliberately transferred $104,139.86 of the 700K Loan proceeds to Georgetown for payment of unrelated debt, when Oberg Farms was insolvent, and when it knew said funds had been lent for the express purpose of funding home construction.

95. In taking this action, Chad Oberg, by and through Oberg Farms, acted with an actual intent to hinder, delay and defraud AFB to the direct benefit of Georgetown.

96. Georgetown either knew, or should have known, that Chad Oberg and Oberg Farms were insolvent when it cashed the check containing the 700K Loan proceeds given that Oberg Farms owed Georgetown an amount in excess of $100,000 for approximately 7 months prior to the payment.

97. As a result of the foregoing, Plaintiff is entitled to: (1) avoidance of the Georgetown Transfer; (2) attachment on the proceeds of the Georgetown Transfer; and (3) judgment against Georgetown in the amount of $104,139.86.

## V. REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1. Entry of judgment against the Obergs in favor of AFB in an amount in excess of $943,037.50, constituting amounts owed under the 900K Loan documents.

2. Entry of judgment against Chad Oberg and Leslie Oberg in favor of AFB in an amount in excess of $724,872.14, constituting amounts owed under the 700K Loan documents.

3. Entry of judgment against the Obergs in favor of AFB in an amount representing the costs, expenses and attorneys' fees incurred by AFB in connection to the Obergs.

4. Entry of judgment against the Obergs in favor of AFB in an amount in excess of $75,000.00 for the fraudulent misrepresentations made by the Obergs to AFB.

5. Entry of an order avoiding the transfer to West Central.

6. Entry of an order attaching the proceeds of the West Central Transfer in favor of AFB.

7. Entry of judgment against West Central in favor of AFB in the amount of $601,632.56.

8. Entry of an order avoiding the transfer to Georgetown.

18

9. Entry of an order attaching the proceeds of the Georgetown Transfer in favor of AFB.

10. Entry of judgment against Georgetown in favor of AFB in the amount of $104,139.86.

11. Entry of an order awarding AFB such other relief that the Court may deem just and equitable.

**RESPECTFULLY SUBMITTED,**

Dated:  August 21, 2019

Matthew J. Bialick, Esq. (#0389088)
17815 Hutchins Drive
Minnetonka, MN 55345
Phone: 952-239-3095
Email: matthew@mjblawmn.com

Jacob B. Sellers, Esq. (#0348879)
825 Nicollet Mall, Suite 1648
Minneapolis, MN 55402
Phone: 612-345-7492
Email: jacob@greensteinsellers.com

**ATTORNEYS FOR PLAINTIFF**

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements, and reasonable attorneys' and witness fees may be awarded pursuant to Minn. Stat. § 549.211, to the parties against whom the allegations in this pleading are asserted.

Dated:  August 21, 2019

Matthew J. Bialick, Esq. (#0389088)

## VERIFICATION

STATE OF NORTH DAKOTA  )
                       )ss.
COUNTY OF CASS         )

Gary Hoots, being duly sworn, states that he is a Senior Vice President of Plaintiff, that he has read the foregoing Complaint, has personal knowledge of the facts alleged therein and states that the same are true and correct, except as to allegations based on information and belief, and as to those he believes them to be true.

*/s/ Gary Hoots*
Gary Hoots
Senior Vice President
American Federal Bank

Subscribed and sworn to before me this 20th day of August, 2019.

*/s/ Tiffany Ness*
Notary Public

Date: May 1, 2023

TIFFANY NESS
Notary Public
State of North Dakota
My Commission Expires May 1, 2023

21