UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| American Federal Bank a federal savings bank,<br><br>   Plaintiff,<br><br>v.<br><br>West Central Ag Services, a Minnesota Cooperative, Georgetown Farmers' Elevator Company, a Minnesota corporation, Chad Oberg, an individual, Richard Oberg, an individual, Leslie Oberg, an individual and Laurel Oberg, an individual.<br>   Defendants. | Civil No. 19-cv-02337 (JRT/LIB)<br><br>**Oberg Defendants' Memorandum in Opposition to Motion for Summary Judgment** |

  Chad Oberg, Richard Oberg, Leslie Oberg, and Laurel Oberg (the "Oberg Defendants") consent to summary judgment with respect to:

- Plaintiff's Count I: Breach of Contract - $900k Loan (Against the Obergs)

- Plaintiff's Count II: Breach of Contract - $700k Loan (Against Chad Oberg and Leslie Oberg)

The Oberg Defendants object to summary judgment with respect to:

- Plaintiff's Count III: Fraud in the Inducement (Against the Obergs).

1

## SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Summary Judgment is only appropriate where there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as matter of law. *Fed. R. Civ. P. 56(c)*. The moving party bears the burden of showing that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When determining whether to grant a motion for summary judgment, a court must view all of the facts in the light most favorable to the non-moving party and give the non-moving party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986).

## THERE ARE MATERIAL ISSUES OF FACT
## THAT PRECLUDE SUMMARY JUDGMENT

To obtain summary judgment on Count III, Fraudulent Inducement, plaintiff must demonstrate uncontested facts showing, with respect to each applicable defendant: (1) The defendant made a false representation of a material past or present fact susceptible of knowledge; (2) The defendant either knew it to be false or asserted it as his own knowledge without knowing whether it is true or false; (3) The defendant intended the plaintiff to act on his or her representation; (4) The plaintiff was induced to act in reliance on the

representation; and (5) The plaintiff suffered damages which were the proximate cause of the representation. <u>Valspar Refinish, Inc. v. Gaylord's, Inc.</u>, 764 N.W.2d 359 (Minn. 2009)(citations omitted).

Here, there are four individual defendants.  To obtain a summary judgment with respect to any of the defendants, the above elements must be separately proven respect to the applicable defendant.  Below is a summary of the material issues of fact as set out in the Oberg Defendants declarations filed concurrently with this response.

### **RICHARD OBERG**

Richard Oberg is married to Laurel Oberg, and the father of Chad Oberg.

The Obergs began transitioning the farm to Chad's operational control in about 2010.  Up through 2014 or 2015, Richard was more active in the farm, but has been most retired for the last several years.

Richard acknowledges that he signed loan documents for a $900,000 loan from American Federal Bank.  Normally, he would sign bank documents at the bank, but he doesn't specifically recall where he signed the loan documents.

Other than if he signed loan documents at the bank, he does not recall any contact with American Federal Bank or its representatives. To the extent he may have had contact with anyone from American Federal Bank, it was incidental to signing the loan documents.  He did not provide financial information to

American Federal Bank or to any of its representatives. He did not have any substantive conversations with representatives of American Federal Bank regarding the loan, its terms or any financial information provided in connection with the loan.

American Federal Bank's summary judgment motion refers to Financial Statements attached as Exhibit E to the Schenk Affidavit (Doc 56-5)(Financial Statements), which is dated as of 12/31/2017 and appears on a Bell Bank letterhead.  Richard did not prepare the Financial Statements.  He did not provide the information that appears in the Financial Statements.  In fact, he did not provide the Financial Statements to American Federal Bank, and was not aware that the Financial Statements were being provided to American Federal Bank.

While Richard has no reason to believe the Financial Statements are inaccurate (as is being claimed by American Federal Bank), Chad was responsible for the farm's finances for the past several years.  He would have worked with Bell Bank to prepare the Financial Statements and he would have been the person who provided the Financial Statements to American Federal Bank.

Based on the above stated facts, which are supported by Richard Oberg's declaration: (1) Richard did not make a false representation to the Bank; (2) To

the extent he could be deemed to have made a representation to the Bank, Richard did not make any knowingly false representations or representations without knowing the truth or falsity of the representation; and (3) Richard did not intend to mislead the Bank. Because there are, at a minimum, at least material issues of fact with respect to these three elements of the Bank's fraud in the inducement claim, summary judgment on this claim against Richard Oberg should be denied.

### LAUREL OBERG

Laurel Oberg is married to Richard Oberg, and the mother of Chad Oberg. The farm was passed down from Richard's father, Elmer, and from his father before him. The transition from Richard to Chad started in approximately 2010, and Laurel pretty much retired in 2012.

Laurel is not knowledgeable of the farm's finances. Richard took care of the farm's finances when they were younger and more active in the farm and, more recently, Chad has taken care of the farm's finances.

Laurel acknowledges that she signed loan documents for a $900,000 loan from American Federal Bank. Normally, she would sign bank documents at the bank, but she doesn't specifically recall where the loan documents were signed.

Other than if she signed loan documents at the bank, she does not recall any contact with American Federal Bank or its representatives. To the extent she

may have had contact with anyone from American Federal Bank, it was incidental to signing the loan documents.

Laurel did not prepare financial statements for Oberg Family Farms or Oberg EQ Group, and is not familiar with the information contained in the financial statements. She did not provide financial information to American Federal Bank or to any of its representatives.

Based on the above stated facts, which are supported by Lauel Oberg's declaration: (1) Laurel did not make a false representation to the Bank; (2) To the extent she could be deemed to have made a representation to the Bank, Laurel did not make any knowingly false representations or representations without knowing the truth or falsity of the representation; and (3) Richard did not intend to mislead the Bank. Because there are, at a minimum, at least material issues of fact with respect to these three elements of the Bank's fraud in the inducement claim, summary judgment on this claim against Laurel Oberg should be denied.

### LESLIE OBERG

Leslie is married to Chad Oberg. Chad operated the farm. Leslie took care of the home and children. Occasionally, she would bring lunches to the people working in the fields, or run errands but she was not active in the farm operations.

Leslie acknowledges that she signed a promissory note and related loan documents for a $900,000 loan and a separate $700,000 loan, but she does not recall if she signed the loan documents at her home, at the office or at the Bank.

Leslie did not prepare financial statements for Oberg Family Farms or Oberg EQ Group, and is not familiar with the information contained in the financial statements.

Leslie had no contact with American Federal Bank or any of its representatives with respect to either the $900,000 loan or the $700,000 loan, other than if she went into the bank to sign the loan documents.

To the extent she may have had contact with anyone from American Federal Bank, it was incidental to signing the loan documents. She provided no financial information to American Federal Bank or to any of its representatives because she had no information to provide.

Based on the above stated facts, which are supported by Leslie Oberg's declaration: (1) Leslie did not make a false representation to the Bank; (2) To the extent she could be deemed to have made a representation to the Bank, Leslie did not make any knowingly false representations or representations without knowing the truth or falsity of the representation; and (3) Leslie did not intend to mislead the Bank. Because there are, at a minimum, at least material issues of fact

with respect to these three elements of the Bank's fraud in the inducement claim, summary judgment on this claim against Leslie Oberg should be denied.

### CHAD OBERG

Through 2018, Chad Oberg operated Oberg Family Farms. In 2019, he went through a process of liquidating the farm's assets in cooperation with his lenders. Oberg Family Farms is not currently operating and has no assets.

Chad is currently an employee of DMO Companies, which is owned by his sister and conducts farming operations.

Over the last several years, Chad was primarily responsible for operating Oberg Family Farms. His wife, Leslie, and his father, Richard, would occasionally run errands or perform small tasks. As part owners, Leslie, Richard and his mother, Laurel, were required to sign loan documents, but they were essentially silent partners.

He acknowledges that he signed a promissory note and related loan documents for a $900,000 loan and a separate $700,000 loan from American Federal Bank. Although he does not specifically recall which documents he provided to American Federal Bank, he does not dispute that he may have provided the Financial Statements that appear as Exhibit E to the Schenk Affidavit (Doc 56-5)(the "Financial Statements"). Those Financial Statements

were prepared in conjunction with Bell Bank and, to the best of Chad's knowledge, were generally accurate as of their 12/31/2017 date.

At pages 8-9 of American Federal Bank's summary judgment motion, the Bank makes a number of false or misleading claims in an attempt to show that Financial Statements were inaccurate as of 12/31/2017:

a. American Federal Bank claims that Oberg Farms only had $2,666,100.16 in corn inventory as of 12/31/2017 based on the sales shown on the General Ledger attached as Exhibit G to the Bialick Dec. First, the General Ledger shows a total of $10,792,640.39 in sales through October 17, 2018, when early 2018 crops would start coming in. Second, the cash receipts portion of the General Ledger does not show remaining inventory on hand. The Bank is misstating the information in the General Ledger and then extrapolating the misstated information to come to an entirely false conclusion.

b. American Federal Bank takes the $2,837,150 shown on the Financial Statements <u>as of 12/31/2017</u> and then claims that the Financial Statements are inaccurate because the Bank balance was $89,647.50 <u>as of 09/26/2018</u>.

c. American Federal Bank takes the $650,000 West Central debt shown on the Financial Statements <u>as of 12/31/2017</u> and then claims that

9

        the Financial Statements are inaccurate because the West Central debt had increased to $2,384,759.85 <u>as of 09/26/2018</u>.

    d.    American Federal Bank claims the Financial Statements are inaccurate because a Krabbenhoft Seed debt which didn't exist as of as of 12/31/2017 was not disclosed on the Financial Statements, which were dated as of 12/31/2017.

    e.    American Federal Bank claims the Financial Statements are inaccurate, not because they misstated the Bell Bank obligation as of as of the 12/31/2017 date of the Financial Statements but because the amount of the Bell Bank debt had increased as of the 09/26/2018 date of the $900k loan.

Based on the foregoing, which is supported by Chad Oberg's declaration:

    1.    Chad did not make a false representation to the Bank. He provided 12/31/2017 Financial Statements that were generally accurate as of the date stated.

    2.    To the extent the information in the 12/31/2017 Financial Statements are inaccurate, or he had an obligation to provide updated financial statements as of the 09/26/2018 date of the $900k Loan, he did not knowingly false representations or representations without knowing the truth or falsity of the representation.

    3.    Chad did not intend to mislead the Bank.

    4.    The Bank did not reasonably rely on the 12/31/2017 Financial Statements in extending the loan.  It is important to understand that, in a farming operation, bank balances and inventory levels are generally highest at the end of the year, following harvest, (as shown on the 12/31/2017 Financial Statements) and lowest immediately before the next year's harvest (at the time of the 09/26/2017 $900k Loan).  This is the ordinary farming cycle.  There is one inventory turn per year.  All agricultural bank's understand this, and this is why farming operations require cash flow lending.  If the Bank wants to claim that they relied on 12/31/2017 Financial Statements being accurate when they advanced their $900k Loan on September 26, 2018, that is not even plausible.

Because there are material issues of fact with respect to four of the five required elements of the Bank's fraud in the inducement claim against Chad Oberg, summary judgment should be denied.

## CONCLUSION

Based on the foregoing, the Oberg Defendants respectfully request that American Federal Bank's summary judgment motion be denied.

                                               Ahlgren Law Office, PLLC

Dated: December 7, 2020         /e/Erik A. Ahlgren
                                                 Attorney #191814
                                                 220 West Washington Ave, Ste 105

Fergus Falls, MN 56537
Office: 218-998-2775
Fax: 218-998-6404
erik@ahlgrenlaw.net

**ATTORNEY FOR
OBERG DEFENDANTS**